UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTONIO VIARDO,<br><br>     Plaintiff,<br><br>     v.<br><br>FAMILIES USA FOUNDATION, INC., *et al*.,<br><br>     Defendants. | Civil Action No. 25-1603 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Antonio Viardo is a former employee of Defendant Families USA Foundation, Inc., a nonprofit organization that advocates on behalf of healthcare consumers. He was terminated by Defendant Yael Lehmann, then the Interim Executive Director, ostensibly for poor performance, missed meetings, and non-responsiveness. In bringing this action under the Americans with Disabilities Act and the District of Columbia Human Rights Act against both the organization and Lehmann, he asserted that the true reason was that Families USA viewed his disability as an unnecessary risk and expense.

Defendants now move to dismiss the counts against Lehmann only. First, they say that Plaintiff cannot proceed on those counts because he failed to exhaust administrative remedies. Second, they argue that Viardo's claims against Lehmann are time barred. The Court disagrees and will deny the Partial Motion to Dismiss.

**I.     Background**

The Court, as it must at this stage, draws the facts from the Complaint and assumes them to be true. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Families

1

USA hired Viardo in May 2023 "to serve on its executive Senior Leadership Team as Senior Director of Communications." ECF No. 1 (Compl.), ¶ 11. In that role, he sought to overhaul the organization's communications department "to support, promote, and help secure millions of dollars' worth of business revenue and cost savings," as well as to "develop[] and implement[] new digital marketing tactics, capabilities, processes and products." Id., ¶ 14. During his first performance review, Plaintiff received high marks and was praised as "the best" among previous communication leaders. Id., ¶ 15.

Viardo suffers from a heart condition that "regularly causes him pain, fatigue, and shortness of breath, and — under certain triggers — dizziness, nausea, and uncontrolled drowsiness, all of which are precursors to a potential heart attack or stroke." Id., ¶¶ 17–18. To stave off medical emergencies, he requires a flexible work schedule that accommodates intermittent breaks during symptom flare-ups and allows time for medical appointments. Id., ¶¶ 19–21. Families USA leadership purportedly was aware of Plaintiff's condition, id., ¶¶ 23–30, and encouraged him "to work outside typical business hours and/or remotely to make up for any lost time." Id., ¶ 31.

In March 2024, then-Interim Executive Director Lehmann requested to meet with Plaintiff following his return from health-related leave. Id., ¶ 40. What he thought would be a routine meeting "to discuss expectations and establish goals for the coming year," id., ¶ 41, allegedly turned into an "ambush[]" to terminate his employment. Id., ¶ 42. Lehmann explained that Plaintiff had been "difficult to reach recently" and that he had "failed to attend a client meeting," had "provided a subpar presentation to an important FUSA client," and had been "taking too much time off." Id., ¶ 43.

Believing that the reasons for his termination "were a clear pretext for discrimination," id., ¶ 48, Plaintiff first filed an administrative complaint with the Equal Employment Opportunity Commission. Id., ¶ 9. He then filed this suit after receiving a right-to-sue letter from the Commission. Id. The Complaint includes four counts. All are lodged against Families USA, while Counts III and IV also apply to Lehmann individually: disability discrimination under the ADA (Count I); retaliation for requesting reasonable accommodation under the ADA (Count II); disability discrimination under the DCHRA (Count III); and retaliation for requesting reasonable accommodation under the DCHRA (Count IV). Defendants now move to dismiss the last two counts though only as to Lehmann. See ECF No. 6 (MTD).

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion, the court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted). The pleading rules are "not meant to impose a great burden," Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are thus not necessary. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). The court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286

(1986)).  The facts instead "must be enough to raise a right to relief above the speculative level" even if "recovery is very remote and unlikely."  Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.     Analysis**

The DCHRA makes it unlawful for an employer to "fail or refuse to hire, or to discharge, any individual" based on that individual's "actual or perceived . . . disability."  D.C. Code § 2-1402.11(a)(1)(A).  The Act further provides that "[i]t shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected" thereunder.  Id., § 2-1402.61(a).  As courts have observed, the statute "announces a broad prohibition against discriminatory acts by an employer," and its intent is to "eliminate discrimination in the District of Columbia."  Kambala v. Chechhi & Co. Consulting, Inc., 280 F. Supp. 3d 131, 138 (D.D.C. 2017) (quotation marks omitted).

In their current Motion, Defendants seek dismissal of the DCHRA counts against Lehmann only.  They contend both that Plaintiff failed to exhaust his administrative remedies before filing suit in this Court and that the DCHRA claims are time barred.  The Court addresses each of those issues in turn.

    A.   Exhaustion

Defendants initially argue that Viardo failed to exhaust his administrative remedies as to Lehmann because he did not file a charge of discrimination directly aimed at her.  See MTD at ECF pp. 4–5.  The question, however, is whether the DCHRA contains any exhaustion requirement at all.  Defendants support their position by relying on guiding principles from the ADA and Title VII of the Civil Rights Act of 1964.  Id.  To bring a civil action under either

statute, "a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC." Cooper v. Henderson, 174 F. Supp. 3d 193, 202 (D.D.C. 2016); see also 42 U.S.C. § 2000e-5(e)(1) (Title VII exhaustion requirements); id., § 12117(a) (ADA section adopting remedies and procedures set forth in Title VII). But that requirement has little bearing on Defendants' position here.

It is true that the DCHRA is often interpreted in parallel with the ADA and Title VII given the similarities among the statutes. Pressley v. Mgmt. Support Tech., Inc., 2023 WL 5206107, at *5 (D.D.C. Aug. 14, 2023) (comparing DCHRA with ADA); Wicks v. Am. Transmission Co. LLC, 701 F. Supp. 2d 38, 44 (D.D.C. 2010) (comparing DCHRA with Title VII). But their parallel journey diverges when it comes to exhaustion. Unlike Title VII or the ADA, the DCHRA provides employees with two separate paths to address discriminatory practices. First, they may file a complaint with the D.C. Office of Human Rights (DCOHR). See D.C. Code § 2-1403.04(a). Alternatively, they may "file a private cause of action in a court of competent jurisdiction." Id., § 2-1403.16(a). As a court in this district previously explained, at least in the context of private-sector employees, the latter option does not require exhausting administrative remedies before pursuing a claim in a court with proper jurisdiction. Ndondji v. InterPark, Inc., 768 F. Supp. 2d 263, 285 (D.D.C. 2011) ("Nothing in the plain language of the DCHRA suggests that an exhaustion requirement applies to non-District of Columbia government employees.").

As the DCHRA is bereft of any exhaustion requirement, the Court will deny Defendants' request to dismiss Counts III and IV on that ground.

B.  Statute of Limitations

Defendants next assert that Plaintiff's DCHRA counts against Lehmann are time barred. "A DCHRA claim must be filed with the [DCOHR] or any court of competent jurisdiction within one year of the alleged conduct." Clay v. Howard Univ., 82 F. Supp. 3d 426, 433 (D.D.C. 2015) (citing D.C. Code §§ 2-1403.04(a), 2-1403.16(a)).  If an employee opts to file a complaint with the DCOHR first, "[t]he timely filing of a complaint with the Office . . . shall toll the running of the statute of limitations while the complaint is pending." D.C. Code § 2-1403.16(a).

To begin, there is no question that the suit against Families USA was timely filed. All parties agree that the determinative date of the allegedly discriminatory or retaliatory conduct was March 7, 2024, when Plaintiff's employment was terminated.  See MTD at ECF p. 2; ECF No. 8 (Pl. Opp.) at 1. Following his termination, Viardo filed a charge of discrimination with the Equal Employment Opportunity Commission on July 8, 2024.  See Compl., ¶ 9. In doing so, his charge was "automatically cross-filed with the [DCOHR] pursuant to a 'worksharing agreement' between the two agencies."  Ellis v. Georgetown Univ. Hosp., 631 F. Supp. 2d 71, 78 (D.D.C. 2009) (citing 29 C.F.R. § 1601.13(a)(4)(ii)(A)). The clock was therefore tolled until the EEOC issued him a right-to-sue letter on February 28, 2025.  See Compl., ¶ 9; Pappas v. District of Columbia, 513 F. Supp. 3d 64, 83 (D.D.C. 2021) ("Once the EEOC . . . issues a right to sue letter, the statute of limitations begins to run anew.") (citation omitted). Letter in hand, he filed this suit against Defendants on May 19, 2025. Excluding tolling time, therefore, Viardo clearly filed within one year.

Defendants instead contend that Viardo "only ever filed an EEOC charge of discrimination against Families USA." MTD at ECF p. 5 (emphasis added). In other words,

6

they assert that the DCOHR charge did not toll the statute of limitations as to Lehmann because that filing never addressed her as a respondent to the EEOC proceedings.

As a general rule, persons not specifically named in an EEOC charge cannot be sued in subsequent litigation. EEOC v. Metzger, 824 F. Supp. 1, 4 (D.D.C. 1993). Yet the rule is not an inflexible requirement that reduces an EEOC charge to a box-checking exercise. U.S. Equal Employment Opportunity Comm'n v. Sol Mexican Grill, LLC, 415 F. Supp. 3d 5, 15 (D.D.C. 2019) ("[T]he naming requirement 'was never intended to be rigid . . . .'") (quoting McManus v. Washington Gas Light Co., 1991 WL 222345, at *5 (D.D.C. Oct. 15, 1991)). An individual not named in an EEOC charge may nevertheless be appropriately named in a subsequent lawsuit so long as she had "actual notice of the EEOC proceeding or [had] an identity of interest with the party or parties sued before the EEOC." Metzger, 824 F. Supp. at 4. Requiring an unnamed party to have knowledge of the proceedings or shared interests with a named party vindicates the filing requirement's purpose: "to give parties notice of discrimination charges and to facilitate conciliation by the EEOC." Anyaibe v. Gilbert Sec. Serv. Inc., 1995 WL 322452, at *3 (D.D.C. May 18, 1995).

The Court believes that Plaintiff's EEOC charge falls within that narrow exception. While Viardo named Families USA as the respondent in his EEOC charge, he directly referenced the Interim Executive Director more than ten times throughout the charge's details. See MTD, Exh. A (EEOC Charge) at ECF pp. 10–11. More importantly, her "particular position[]" makes it "fair to infer [that she] had notice of [Viardo's] EEOC charge or had a sufficient identity of interest" with Families USA. Lanier v. Smedberg, 2025 WL 2144075, at *8 (D.D.C. July 29, 2025). As Interim Executive Director, Lehmann held the "most senior position within FUSA and maintain[ed] responsibility and/or discretion with respect to the hiring and/or termination of

7

other executives." Compl., ¶ 13. What is more, the charge identified Lehmann as the key figure behind Plaintiff's firing, and Families USA's response centered largely on defending her conduct and decisions. See Pl. Opp., Exh. 1 (EEOC Charge Resp.) at 3–6.

Lehmann's circumstances differ from cases where courts have barred subsequent suits against parties not named in an EEOC charge. For example, in Metzger, a law-firm partner could not be sued when the partnership had notice of an EEOC charge, but there was no evidence that the individual partner "was mentioned in the details of the charge before the EEOC." 824 F. Supp. at 4. In Clay, frequent references to a university executive in EEOC charges were insufficient to toll the statute of limitations because the executive "was no longer an employee or officer . . . at the time Plaintiff filed her EEOC charges." 82 F. Supp. 3d at 434. Finally, in Newman v. Amazon.com, Inc., 2022 WL 971297 (D.D.C. Mar. 31, 2022), the court likewise declined to impute a company's knowledge of an EEOC charge to an individual referenced in that charge because he was "simply an employee" who "did not have an 'identity of interest' with the company." Id. at *9.

The circumstances here, conversely, lead to a reasonable inference that Lehmann either had notice of Plaintiff's EEOC charge or a sufficient identity of interest with Families USA. The Court therefore concludes that Plaintiff's discrimination charge was sufficient to toll the DCHRA statute of limitations against Lehmann as well. There is thus no basis to dismiss the counts against her.

## IV. Conclusion

For these reasons, the Court will deny Defendants' Partial Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  August 13, 2025

9